UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| GABRIEL KIMBALL, | ) | |
| | ) | |
| *Petitioner,* | ) | |
| v. | ) | No. 1:08-CV-124 |
| | ) | *Chief Judge Curtis L. Collier* |
| TOMMY MILLS, Warden, | ) | |
| | ) | |
| *Respondent.* | ) | |

**M E M O R A N D U M**

Gabriel Kimball ("Kimball" or "Petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Court File No.1). Tommy Mills ("Respondent"), Warden of the facility where Kimball is housed, has filed an answer (Court File No. 7). Respondent's answer to the habeas corpus petition conforms with Rule 5 but also contains an argument that the petition must be dismissed based upon procedural default and the deferential review standards set forth in § 2254(d) and *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Upon review of Petitioner's verified habeas petition, which was signed under penalty of perjury, Respondent's answer, and the transcripts and records of the state court proceedings, the Court determines an evidentiary hearing is not warranted. *See* Rule 8 of the Rules Governing Section 2254 Cases in the United States District Court.

After considering the filings of Petitioner and Respondent, the record of the state proceedings, and the applicable law, the Court concludes Petitioner's § 2254 petition will be **DISMISSED** (Court File No. 1).

I.      **STANDARD OF REVIEW**

A state criminal defendant may obtain federal habeas relief if he can demonstrate he is in custody pursuant to the judgment of a state court in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254. Under Rule 8 of the Rules Governing Section 2254 Proceedings in the United States Districts Courts, the Court is to determine, after a review of the response, the transcript, record of state court proceedings, and the expanded record, whether an evidentiary hearing is required. If a hearing is not required, the district judge may dispose of the case as justice dictates. After carefully reviewing the required materials, the Court finds it unnecessary to hold an evidentiary hearing

Federal courts, pursuant to 28 U.S.C. § 2254(d) which is a part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review decisions of the state courts. This statute limits a federal district court's jurisdiction to review habeas claims on the merits. In particular, a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

Credibility findings made by state courts are entitled to the presumption of correctness. *McQueen v. Scroggy,* 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied,* 520 U.S. 1257 (1997), *overruled on other grounds by In re Abdur'Rahman*, 392 F.3d 174 (6th Cir. 2004); *Smith v. Jago,* 888 F.2d 399, 407 (6th Cir. 1989), *cert. denied,* 495 U.S. 961 (1990). In addition, state court factual findings are to be presumed correct unless a petitioner offers clear and convincing evidence to the

contrary. 28 U.S.C. § 2254(e)(1). Although "deference does not imply abandonment or abdication of judicial review," *Miller-El v. Cockrell,* 537 U.S. 322, 324 (2003), "§ 2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal punctuation and citations omitted). The above standards will be applied here because all grounds raised in the federal petition were adjudicated first in the state courts.

## II.     PROCEDURAL HISTORY

In 2005 Petitioner pleaded guilty to rape of a child and was sentenced to fifteen (15) years of imprisonment. Petitioner did not pursue a direct appeal but eventually pursued state post-conviction relief which proved to be unsuccessful. *See Kimball v. State*, 2007 WL 2757634 (Tenn.Crim.App. Sept. 24, 2007), *perm. app. denied* (Tenn. Feb. 4, 2008). He now petitions this Court for review of that conviction. He bases his effort for relief on a claim of denial of his constitutional right to effective assistance of counsel in three instances claiming counsel failed to (1) preserve his right to appeal the juvenile court's transfer to criminal court, (2) present medical evidence at his juvenile transfer hearing, and (3) appeal the dismissal of his motion to dismiss, based on a claim of unreasonable delay in prosecution.

The portion of the procedural history of this case which occurred in juvenile court is somewhat complicated. Although Defendant was charged with rape of child on November 11, 2001, the transfer hearing in Bradley County Juvenile Court was not conducted until February 17, 2005, resulting in the case being transferred to Bradley County Criminal Court. In order to clearly understand the unusual and lengthy factual and procedural history of the case from the time Petitioner was charged until the time of the transfer hearing, the Court finds it necessary to

3

reproduce the March 7, 2005, Juvenile Court Order disposing of the state's motion to transfer the case to criminal court and Petitioner's motions to dismiss.[1] Petitioner was charged with rape of child on November 11, 2001, in Bradley County Juvenile Court [Addendum No. 2, Exhibit 2]. At the time of the commission of the crimes Petitioner was seventeen years of age. Proof was presented at the hearing and the Order reflects:

> The proof showed on November 11, 2001, Defendant, DOB September 28, 1984, was charged with **Rape of a Child**, in violation of TCA 39-13-522. An agreed order, dated January 8, 2002, required Defendant to attend a program at Hermitage Hill in Nashville. A hearing was set for April 8, 2002 ". . . for disposition and for a review of the child's treatment and progress." That hearing was never conducted. Notes in the file show the records were requested from Hermitage Hill after he reached 18 YOA. He stayed about seven months after his 18th birthday, leaving in April 2003. It is not clear to the Court what outcome was expected from the treatment at Hermitage Hill, what progress was made, how much longer the "experts" wanted him to stay and what would have happened to Defendant if he had been "successfully" treated. He has had various adult criminal charges since leaving Hermitage Hill and has spent much time in custody since then. Prior to November 11, 2001, Defendant had no court record. Because of a conflict, the attorney who first represented Defendant was allowed to withdraw from the case on August 28, 2003. Defendant's present attorney was appointed on October 8, 2003, the same date a petition to transfer the case to Criminal Court was filed. Motions were filed on behalf of Defendant to dismiss on the basis of double jeopardy and for lack of a speedy trial.

> The delay for the scheduling of his hearing (since October 8, 2003) has resulted from Defendant's objection to having a special judge hear the motions and the normal scheduling problems for special situations [Addendum No. 2, Exhibit 2].

> In disposing of the State's motion to transfer the case to criminal court, the Juvenile Court

made the following findings:

---

[1]       This Juvenile Court Order is the only evidence of the transfer hearing before the Court as there is no transcript or recording of the testimony presented during that hearing in the record.

4

a.      Defendant was over the age of 16 at the time of the alleged conduct;

b.      Reasonable notice of the transfer hearing was given as required by law once the petition was filed, but there was an unreasonable delay (almost two years) in filing the petition;

c.      There are reasonable grounds to believe Defendant committed the delinquent act as alleged;

d.      Defendant is not committable to an institution for the developmentally disabled or mentally ill; and

e.      The interests of the community require that the child be put under legal restraint or discipline.

Among other matters the court considered:

a.      Defendant had neither a prior delinquency record nor past treatment efforts, both favoring Defendant;

b.      The offense against a person, favoring the State;

c.      The offense was committed in a premeditated manner, favoring the State;

c.      Procedures, services and facilities, other than what was unsuccessfully attempted while Defendant was a juvenile, are not available to the court;

d.      Nothing suggests there was any gang activity involved.

That Defendant has had adult charges may not be considered in the transfer hearing.

MOTION TO DISMISS FOR LACK OF SPEEDY TRIAL

Rule 17 requires a disposition hearing within 90 days. It gives the court the authority to dismiss a case with prejudice if the hearing is not conducted within this time. It also grants authority to continue the case for longer than 90 days for good cause. It was appropriate for the State to allow more than 90 days to determine Defendant's progress before making a disposition of the case.

Defendant has not made a request for a speedy trial. This would be reason to deny his motion had he been an adult when the offense was committed. Since Defendant was a juvenile, Rule 17 makes the State responsible to initiate the trial. Granting Defendant's motion is not mandatory.

5

While the State barely made reasonable efforts to proceed with a trial in Juvenile Court after it was learned Defendant left the treatment program. [sic] Waiting for nearly two years to file a transfer was unreasonable.

If the State's motion is denied, Defendant cannot be tried for the serious offense with which he is charged. Giving time to investigate treatment possibilities, the State should have filed the motion to transfer shortly after making the charge. Defendant was already past the age of 19 before the transfer motion was filed. The delay makes it seem the State initially intended to dispose of this case in the Juvenile Court; but decided to file the transfer motion because of Defendant's conduct after reaching his 18th birthday and the discovery that the case must be dismissed if it is not tried in the Criminal Court.

### MOTION TO DISMISS ON BASIS OF DOUBLE JEOPARDY

Defendant entered the treatment program at Hermitage Hill voluntarily. There apparently was no agreement as to disposition of the case in the event of successful completion of the program. It is not known what more he would have had to do to complete it (The Court is concerned that this may have been left to the discretion of the officials at Hermitage Hill which had a financial incentive to keep Defendant for as long as possible.) There was no entry of a plea and no finding on the issue of guilt.

The Court must decide if the State's delay was unreasonable enough to allow a serious charge go untried. Defendant's criminal activity since becoming an adult was not included as a factor in whether or not to transfer. The fact that he has been in custody much of the time does make the State's delay in filing the motion to transfer less unreasonable. Considering all of the above, the State's motion to transfer is granted.

Since Defendant is in custody for an adult offense, no bond will be set. Should Defendant be released form [sic] custody for all other offenses before the case reaches the Criminal Court, the Court will entertain a motion by Defendant to set a bond.

[Addendum No. 2, Exhibit 2].

Although the documents are not part of the record before the Court, Petitioner's state defense counsel testified he filed a document in the criminal court appealing the decision by the juvenile court to transfer the case, to which the State filed a response [Addendum No. 2, p. 60]. Nevertheless, there was no hearing on the motion and Petitioner entered a guilty plea to rape of a

child for a 15 year sentence with credit for the time he attended the Hermitage House and for times he was incarcerated on other crimes [Addendum No. 2, p. 61, Exhibit 3].

Petitioner filed a *pro se* petition for state post-conviction relief in Bradley County Criminal Court on November 1, 2005.  After a hearing on petitioner's state post-conviction petition, the state post-conviction court dismissed the petition, on September 24, 2007, the appellate court affirmed the state post-conviction court's denial of relief.  Petitioner's application for permission to appeal was denied by the Tennessee Supreme Court on February 4, 2008.

## IV.  FACTUAL BACKGROUND

The facts of the case are taken from the appellate court's opinion denying post-conviction relief:

> Petitioner testified that he was charged in the Bradley County juvenile court on November 30, 2001, with delinquency regarding a charge of rape of a child. He was seventeen years old at the time. Petitioner acknowledged that he committed the offense against the victim, his five-year-old cousin. Petitioner's parents retained the assistance of attorney Jerry Hoffer to assist Petitioner in the initial hearing. The juvenile court ordered Petitioner to undergo a psychosexual evaluation which resulted in a recommendation that Petitioner enter a residential sex offender treatment program. Petitioner accordingly entered Hermitage Hall on December 24, 2001, pursuant to an agreed order. Petitioner continued to participate in the program after he turned eighteen, but he voluntarily left the program in May 2003 because he said that the Hermitage Hall staff told him that his insurance would no longer pay his expenses at the facility.
>
> Petitioner said that his father visited him at the facility once, and that they spoke on the telephone a few times. Petitioner said that he did not discuss the status of his case with his father, and he did not know that his juvenile case was still pending. Petitioner said that he did not learn until September 2003, that Mr. Hoffer had withdrawn from the case. Petitioner acknowledged that he was not aware that his father had informed the district attorney's office of his voluntary discharge from Hermitage Hall.
>
> Petitioner said that the State filed a petition to transfer him to criminal court to be tried as an adult on October 18, 2003, when Petitioner was nineteen years old, and trial counsel was appointed to represent him at the transfer hearing. Petitioner said

that his trial counsel met with him once before he was incarcerated on other unrelated charges in another county and three or four times after his incarceration on those charges. Petitioner discussed the upcoming transfer hearing with trial counsel during those meetings.

Petitioner testified that the transfer hearing was held on February 17, 2005. Petitioner said that he and his trial counsel did not discuss Petitioner's treatment at Hermitage Hall, and trial counsel did not request his medical records from the facility. Petitioner stated that no evidence was therefore presented at the transfer hearing as to how well he did in the program. Petitioner acknowledged that trial counsel filed a motion to dismiss on the basis that Petitioner had been prejudiced by the delay in prosecution, and that the motion was denied.

Petitioner said that the State initially offered to settle the charge if Petitioner agreed to enter a plea to a lesser charge in exchange for a recommended sentence of eight years. Petitioner believed that the offer was withdrawn because of the victim's age. Petitioner said that after his case was transferred to criminal court, he agreed to enter a plea of guilty to the charge of rape of a child in exchange for a recommended sentence of fifteen years. Petitioner believed that if he did not accept the State's offer of settlement, he would be sentenced to twenty-five years. Petitioner said that he did not know that he had the right to appeal the juvenile court's decision to transfer his case to criminal court.

On cross-examination, Petitioner acknowledged that he knew that he would be sentenced to fifteen years as a result of his entry of a plea of guilty. Petitioner conceded that he testified at the transfer hearing. He denied that he asked his trial counsel to set up a meeting with his father so that Petitioner could discuss the offered plea agreement with him. Petitioner insisted that his father "just decided to come down," and said that trial counsel was lying if he testified otherwise. Petitioner denied that trial counsel discussed his treatment at Hermitage Hall with the juvenile judge. Petitioner acknowledged that the juvenile court was aware of his later criminal charges. Petitioner said he entered a plea of guilty to theft of property over $10,000 on December 16, 2003, and was granted judicial diversion. Petitioner said he entered guilty pleas to two more theft charges in Williamson County on October 5, 2004, and was sentenced to three years' incarceration.

Petitioner denied that the delay between the filing of the charge in juvenile court and the transfer hearing was due in part to his other criminal charges. Petitioner said that the delay primarily resulted from the State's failure to communicate with Hermitage Hall. Petitioner insisted that he told people that he was leaving the facility, and that his therapist met with his family concerning his decision.

Petitioner's trial counsel testified that he was originally appointed to represent

Petitioner by the juvenile court and represented Petitioner at both the transfer hearing and through the guilty plea submission hearing after Petitioner's case was transferred to criminal court. Trial counsel filed a motion to dismiss in juvenile court on the basis that the State's delay in prosecuting Petitioner was unreasonable. Trial counsel argued that Petitioner was prejudiced by the delay because by the time the transfer hearing was held, the matter was no longer capable of being resolved in juvenile court. Trial counsel said that he believed that the delay was prompted by a lack of communication between the State and Hermitage Hall.

Trial counsel said that he was aware that Petitioner had been ordered by the juvenile court to undergo treatment at Hermitage Hall, and he had a copy of Petitioner's psychosexual evaluation. Trial counsel stated that his conversations with Petitioner and others indicated that Petitioner's medical records from Hermitage Hall would not be favorable to Petitioner's case because they would show that Petitioner had not sufficiently progressed with his treatment at the facility. Trial counsel said that he did not request Petitioner's medical records because he did not want to introduce any adverse evidence. In addition, trial counsel said that Petitioner had left Hermitage Hall of his own accord and not because the facility released him for satisfactorily completing the program.

Trial counsel clarified that the State offered to settle the case prior to the transfer hearing by agreeing to recommend a sentence of eight years in exchange for Petitioner entering a plea of guilty to the lesser charge of aggravated sexual battery and waiving his right to a transfer hearing in juvenile court. Petitioner did not accept the offer, and the transfer hearing was conducted on the original charge of rape of a child. After the case was transferred to criminal court, the State again offered to settle the matter by recommending a sentence of fifteen years, with credit for the time spent at Hermitage Hall, in exchange for Petitioner's plea of guilty to rape of a child. Trial counsel said that he left the decision of whether to accept the offer up to Petitioner. Trial counsel stated that he believed Petitioner would be convicted if he proceeded to trial because Petitioner admitted to the investigating officer and his parents that he had committed the offense and because of the State's other evidence. Trial counsel believed that Petitioner would not be sentenced to the maximum sentence of twenty-five years for this offense, but he did not advise Petitioner that the minimum sentence of fifteen years was a certainty.

Trial counsel stated that he advised Petitioner that if he decided to enter a plea of not guilty and proceed to trial, he could appeal the juvenile court's decision to transfer him to criminal court, but that if he entered a plea of guilty he would lose the right to appeal the issue. Trial counsel said he reviewed with Petitioner all of his rights which were waived as a result of entering his guilty plea, and he never had any concern over Petitioner's ability to understand the guilty plea submission process. Trial counsel said that Petitioner discussed the State's proffered offer of settlement with his father before he decided to accept the negotiated plea agreement.

9

*Kimball v. State,* 2007 WL 2757634, 1 -3  (Tenn.Crim.App. 2007)

## V.     ANALYSIS

### A.     Ineffective Assistance of Counsel

Petitioner asserts that his trial counsel was deficient in three instances.  The Court will address each of the three alleged instances of counsel's deficient performance individually after identifying the law which applies to ineffective assistance of counsel claims.

Federal courts must defer to state court factual findings, according them a presumption of correctness that the petitioner may rebut only with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  This presumption only applies to underlying basic, primary, or historical facts, and not to mixed questions of facts and law.  *Rickman v. Bell,* 131 F.3d 1150, 1153 (6th Cir. 1997), *cert. denied,* 523 U.S. 1133 (1998);*West v. Seabold,* 73 F.3d 81, 84 (6th Cir.), *cert. denied,* 518 U.S. 1027 (1996).  Ineffective assistance of counsel in a petition for habeas corpus review presents a mixed question of law and fact.  *See Railey v. Webb*, 540 F.3d 393, 416 (6th Cir. 2008) (observing that an ineffective assistance of counsel claim is a mixed question of law and fact); *West v. Seabold,* 73 F.3d at 84 (same).  Therefore, a state court's conclusion counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254 (e)(1).  State court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of 28 U.S.C. § 2254(e).  However, the performance and prejudice components of the ineffectiveness inquiry, which are mixed questions of law and fact, are not entitled to the deference.  *See Rickman,* 131 F.3d at 1153-54.  To obtain relief, Petitioner must show the state court's adjudication resulted in a decision that involved an unreasonable application of clearly established Federal law as determined by the United States Supreme Court.  28 U.S.C.

§ 2254(d)(1); *see also, Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003), *cert. denied*, 540 U.S. 1164 (2004) (Stating that a claim of ineffective assistance of counsel presents a mixed question of fact and law, thus, requiring the application of the "unreasonable application" prong of § 2254(d)(1), the Sixth Circuit observed that "a federal court may not grant a writ of habeas corpus 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable.'" (*quoting Williams v. Taylor*, 529 U.S. 362, 411 (2000)).

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. To establish his attorney was not performing within the range of competence demanded of attorneys in criminal cases, the defendant must demonstrate the attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88; *McMann v. Richardson*, 397 U.S. 759, 771 (1970). The *Strickland* test requires that a defendant demonstrate two essential elements: (1) counsel's performance was deficient, *i.e.,* counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense, *i.e.,* deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id.* at 687-88; *McQueen v. Scroggy,* 99 F.3d 1302, 1310-11 (6th Cir. 1996), *cert. denied,* 520 U.S. 1257 (1997); *Sims v. Livesay,* 970 F.2d 1575, 1579-81 (6th Cir. 1992). S*ee also Flippins v. United States,* 808 F.2d 16, 17-18 (6th Cir.), *cert. denied,* 481 U.S. 1056 (1987). As the Sixth Circuit explained in *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied,* 508 U.S. 975 (1993): "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won."

11

*See also West v. Seabold,* 73 F.3d at 84. "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment'." *West,* 73 F.3d at 84 (quoting *Strickland,* 466 at 691). There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689; *Sims,* 970 F.2d at 1579-80.

"Reviewing courts focus on whether counsel's errors have undermined the reliability of and confidence that the trial was fair and just." *Austin v. Bell,* 126 F.3d 843, 847 (6th Cir. 1997), *cert. denied,* 523 U.S. 1079 (1998). The Court cannot indulge in hindsight, but must instead evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Strickland,* 466 U.S. at 690; *McQueen,* 99 F.3d at 1311. Trial counsel's tactical decisions are particularly difficult to attack. *McQueen,* 99 F.3d at 1311; *O'Hara v. Wigginton,* 24 F.3d 823, 828 (6th Cir. 1994). A defendant's challenge to such decisions must overcome a presumption that the challenged actions might be considered sound trial strategy. *McQueen,* 99 F.3d at 1311; *O'Hara,* 24 F.3d at 828. Effective assistance of counsel is presumed, and the Court will not generally question matters involving trial strategy. *See United States v. Chambers,* 944 F.2d 1253, 1272 (6th Cir. 1991), *cert. denied,* 502 U.S. 1112 (1992).

To establish the prejudice prong in the context of a guilty plea, the focus is "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). A mere allegation from a petitioner that he would have gone to trial had counsel's advice been different is insufficient

12

to establish a reasonable probability that he would have actually done so. *Joseph v. Butler*, 838 F.2d 786, 791 (5th Cir. 1988) (concluded mere allegation that but for counsel's advice he would have proceeded to trial was "insufficient to reach the threshold of 'reasonable probability'"). Therefore, a petitioner is required to prove there is a reasonable probability that but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial.

The Court will now address each of the alleged instances of ineffective assistance of counsel.

### 1. Juvenile Court Transfer

Petitioner intertwined all of this habeas claims under "GROUND ONE" in his habeas petition; thus, they are confusingly pled. Petitioner contends counsel was ineffective for failing to appeal the Juvenile Court's decision to transfer him to criminal court and advise him of his right to appeal the transfer hearing (Court File No. 1). In his supporting brief, Petitioner argues counsel should have appealed or made sure Petitioner waived his right to appeal the transfer hearing in writing on the record at the time of his guilty plea proceeding (Court File No. 2, p. 7-8). The state appellate court and Respondent construed these allegations as a claim that counsel failed to preserve his right to appeal the transfer decision and as a claim that counsel failed to appeal the dismissal of the motion dismiss. This Court will do the same, addressing the failure to preserve claim in this section.

During his state post conviction hearing, trial counsel testified he discussed with Petitioner, his right to appeal the decision by the juvenile court to transfer the case to criminal court [Addendum No. 2, p. 60]. Counsel filed a motion requesting an acceptance hearing in criminal court, to review the juvenile court's decision to transfer the case, to which the State filed a response. Petitioner's case did not meet the legal requirements to qualify for an acceptance hearing in the criminal court.

13

If the juvenile judge who presides over the acceptance hearing is a lawyer, the governing statute, Tenn. Code Ann. § 37-1-159(d), does not provide for an acceptance hearing in criminal court, and the criminal court has no authority to decline jurisdiction. There was no evidence that the juvenile court judge in Petitioner's case was not a lawyer.

There was no acceptance hearing and Petitioner subsequently accepted the state's plea offer and pleaded guilty to rape of child and accepted a 15 year sentence [Addendum No. 2, Transcript of Guilty Plea, pp. 4-7]. When asked whether "[p]rior to him entering his guilty plea to rape of a child and being sentenced to 15 years, did you advise him of his rights to . . . plead not guilty, and if he was convicted, appeal the transfer decision to the Court of Criminal Appeals?" Counsel responded "Yes." Counsel testified he discussed with Petitioner they could appeal the transfer decision but if he entered a guilty plea he would be giving up the right to appeal the transfer decision. Counsel further stated, although there was nothing in the transcript of the guilty plea colloquy regarding the waiving of his right to appeal the transfer decision, he had discussed it in detail with Petitioner. In addition, counsel testified they had a detailed discussion on the speedy trial and double jeopardy issues [Addendum No. 2, Transcript of Post-Conviction Hearing, pp. 61-62].

As previously stated, the state appellate court addressed this issue entitling it as a claim that counsel failed to preserve Petitioner's right to appeal. The state appellate court began its analysis by explaining the applicable state law. Tenn. Code Ann. § 37-1-134(a) provides that the juvenile court has original jurisdiction over children who are alleged to be delinquent. Tenn. Code Ann. § 37-1-124(a)(1)-(4) provides the circumstances in which a juvenile court "shall" transfer a juvenile accused of conduct that constitutes a criminal offense to the criminal court to be tried as an adult. The juvenile must be at least sixteen years old when he commits the offense and be provided with

14

notice and a hearing. Tenn. Code Ann. § 37-1-134(a)(1)-(3). Certain factors must be assessed during

the hearing. The juvenile court must find "reasonable grounds to believe" the juvenile committed

the alleged delinquent act; the juvenile "is not committable to an institution for the mentally retarded

or mentally ill," and the community's interests require legal restraint or discipline of the juvenile.

Tenn. Code Ann. § 37-1-134(a)(4)(A)-(C). "If these grounds are found by the juvenile court,

transfer from juvenile court to criminal court is subject to the juvenile court's discretion." *Kimball

v. State*, 2007 WL 2757634, at *4. Petitioner met the factors necessary to transfer his case to

criminal court.

> Next, the appellate court reviewed Tennessee law regarding appeals from juvenile court:

> Appeals from juvenile court are governed by Tennessee Code Annotated section
> 37-1-159. There is no civil or interlocutory appeal from a juvenile court's decision
> that a child should be dealt with as an adult in the criminal court. *State v. Griffin*, 914
> S.W.2d 564, 566 (Tenn.Crim.App.1995) (citing T.C.A. § 37-1-159(d)). If the
> juvenile judge who presides over the transfer hearing is a lawyer, the statute does not
> provide for an acceptance hearing in criminal court, and the criminal court has no
> authority to decline jurisdiction. *Id*. No evidence was presented at the
> post-conviction hearing that the juvenile judge in the case *sub judice* was not a
> lawyer. Indeed, trial counsel testified that he attempted to file a motion for an
> acceptance hearing which was apparently dismissed because Petitioner's juvenile
> judge was, in fact, a lawyer. *See id*. ("If and only if a nonlawyer judge presides at
> the transfer hearing in juvenile court," then the juvenile may move the criminal court
> to hold a hearing to determine whether it will accept jurisdiction over the juvenile.).

> Thus, in order to seek appellate review of the juvenile court's transfer ruling, "the
> juvenile in criminal court must either (1) enter a plea of not guilty and thus preserve
> the issue for review, if convicted, or (2) reserve the issue on a plea of guilty or nolo
> contendere pursuant to [Tennessee] Rule [of Criminal Procedure] 37(b)(2)(I) or
> (b)(2)(iv)." *Id*. (emphasis in original). "The second alternative assumes that the
> decision of whether the juvenile should be tried as an adult is a 'certified question
> of law' that may be appealed pursuant to Rule 37." *Griffin*, 914 S.W.2d at 566.

> This Court has previously observed that, assuming for purposes of the case that the
> transfer issue is dispositive of the criminal case, a trial counsel's failure to preserve
> the issue of a juvenile court's transfer ruling for appeal as a certified question of law
> is not automatically the ineffective assistance of counsel. *Eddie Lee Lowe v. State*,

15

No. W1999-00881-CCA-R3-PC, 2000 WL 1285333 (Tenn.Crim.App., at Jackson, Aug. 30, 2000), *perm. to appeal denied* (Tenn., April 9, 2001). As the *Lowe* court stated:

> [a] guilty plea based upon the reasonably competent advice of counsel may not be attacked because of the possibility that the eventual outcome of an issue may have been favorable to the petitioner had he or she proceeded to trial. *McMann v. Richardson*, 397 U.S. 768, 769-70, 90 S.Ct. 1114, 1448 (1970). The decision to plead guilty before all the issues are resolved necessarily involves the making of difficult choices based upon uncertain judgments and predictions. *Id.* Furthermore, a defendant's decision to plead guilty may rest upon factors that go beyond the legal issues involved in the case such as the reduction of stress on the defendant and his or her family, the removal of uncertain consequences arising from a trial, and the reduction of actual exposure. *See, e.g., id.* at 768-69, 90 S.Ct. at 1447. Thus, in order to prove the prejudice prong of *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, the petitioner must establish that a reasonable probability exists that "but for counsel's errors," he would not have pled guilty but would have insisted on a trial. *Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

> *Id.*, 2000 WL 1285333, at *7.

According to the transcript of the guilty plea submission hearing, the trial court thoroughly explained Petitioner's rights, including his right of appeal, which were waived by the entry of a plea of guilty. Petitioner stated that he understood the consequences of his plea, including his rights to appellate review, and that it was his desire to nonetheless enter a plea of guilty. Petitioner acknowledged that he committed the charged offense. Petitioner testified at the post-conviction hearing that he understood what he was doing when he entered his guilty plea, and that he did so because he did not want to risk being sentenced to the maximum sentence in the applicable sentencing range. Petitioner discussed the entry of a guilty plea with his father. These circumstances indicate that Petitioner wanted to plead guilty despite the loss of his right to appellate review of the juvenile court's transfer ruling. Moreover, Petitioner presented no evidence that the prosecutor would have accepted a certified question as part of the plea agreement, or that a certified question would have been appropriate as dispositive of the case.

After review, we conclude that Petitioner has failed to show that he was prejudiced by trial counsel's failure to certify a question regarding his transfer from juvenile court. Petitioner is not entitled to relief on this issue.

*Kimball v. State,* 2007 WL 2757634, 4 -6  (Tenn.Crim.App. 2007).

The Court must review the Tennessee Court of Criminal Appeals resolution of this issue in

16

reference to the standards for reviewing habeas claims on the merits. Petitioner, however, makes no argument that the decision of the Tennessee Court of Criminal Appeals was contrary to, or an unreasonable application of, clearly established federal law, as required by 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented at the state court hearing, as required by 28 U.S.C. § 2254(d)(2). Consequently, he has not satisfied his burden of showing that he is entitled to relief on this claim, and as explained below, the record does not demonstrate the state court decision was contrary to, or an unreasonable application of Supreme Court Precedent or based on an unreasonable determination of the facts.

The testimony from Petitioner's attorney indicates that he gave Petitioner a full explanation of his rights and alternatives, and fully explained his right to proceed to trial and preserve his right to appeal the transfer hearing. Counsel explained to Petitioner that if he pleaded guilty he would lose his right to appeal the transfer hearing but if he proceeded to trial, it would preserve the issue [Addendum No. 2, pp. 60-66]. Although Petitioner testified he did not recall counsel advising him of his right to appeal the transfer decision or the late filing of the petition, the state post-conviction trial judge undoubtedly found trial counsel's testimony believable, and the Court finds no reason to disturb that finding. Notably, by pleading guilty, Petitioner received certain benefits. The state agreed to the following: (1) a minimum sentence available for the Class A conviction for Rape of a Child, i.e., 15 years, (2) to run his sentence concurrent with the Williamson County time, (3) to give him credit for the time he spent at the Hermitage Hall for psychosexual therapy, and (4) to credit for time spent in jail on other charges [Addendum No. 2, Transcript of Guilty Plea Hearing, Exhibit 3]. Furthermore, the record reveals Petitioner entered a knowing and intelligent guilty plea based upon the reasonably competent advice of counsel [Addendum No. 2].

17

Nevertheless, even if counsel's performance was deficient, the record supports the state court's conclusion that Petitioner did not demonstrate he suffered any prejudice. Petitioner argues counsel should have appealed the transfer issue or "made sure he waived in writing on the record at the time of his guilty plea proceeding." (Court File No. 1, pp. 7-8). First, there is nothing in the record indicating a reasonable probability that an appeal of the transfer issue would have been successful and that Petitioner was harmed by counsel's failure to preserve the issue. More importantly, however, Petitioner, has not demonstrated prejudice as he has not fulfilled his burden of demonstrating a reasonable probability, that but for counsel's alleged deficiency, he would not have pleaded guilty but rather, would have demanded a trial. This conclusion is supported by Petitioner's habeas petition and supporting brief wherein he not only fails to provide any evidence to demonstrate a reasonable probability that he would have proceeded to trial, he does not even allege he would have proceeded to trial absent counsel's alleged deficient performance (Court File Nos. 1, 2). Notably, had Petitioner proceeded to trial, he would have been exposed to a 15 to 25 year sentence with the possibility of no credit for the times he served at the Hermitage Hall and incarcerated on other charges. Consequently, Petitioner has not demonstrated, nor does the record reveal that he was prejudiced by counsel's alleged failure to advise him of his right to appeal the juvenile court's transfer ruling or preserve his right to appeal the transfer issue.

In considering Petitioner's claim, the Tennessee appellate court cited to *Strickland* and *Hill* for the legal principles governing the claim. Accordingly, because the state court's adjudication of this claim was not based upon an unreasonable determination of the facts, and was not contrary to, or an unreasonable application of *Strickland* or *Hill*, habeas relief is not warranted.

**2.** _**Failure to Present Medical Evidence at the Transfer Hearing**_

18

Petitioner complains that counsel failed to submit medical and psychological evidence at his transfer hearing. In his supporting brief, Petitioner supports this claim with the following assertions:

> The Juvenile Court did not consider the success or failure of Hermitage Hall to treatment and rehabilitation of the Petitioner. The Petitioner's attorney never reviewed nor presented any treatment record from the treatment facility.
>
> As a result the Juvenile Court could in no way account for the past treatment effort of Mr. Kimball during the extensive time he was in the treatment facility. The Petitioner's attorney acknowledged that this was a factor the Juvenile Court considered in the decision whether or not to transfer a child to adult court. A transfer hearing where there is no evidence presented by either the prosecutor or defense counsel or how a child responded during 15 months of residential rehabilitative treatment is not a fair hearing.

(Court File No. 1).

Notably, Petitioner never presented his residential rehabilitative treatment records to the state post-convictions courts to consider. Indeed, the state appellate court observed that neither the transcript of the transfer hearing nor Petitioner's medical records were included in the record. The appellate court further noted that it was Petitioner's duty, pursuant to Tenn. R. App. P. 24, to prepare an adequate record for appellate review. *Kimball v. State*, 2007 WL 2757634, at *6. The appellate court determined counsel's performance was not deficient because, as he testified at the post conviction proceeding, after meeting with Petitioner and discussing his treatment at Hermitage House, he made a strategic decision not to introduce Petitioner's Hermitage Hall medical records because he believed such records would be detrimental to Petitioner's case. Instead, counsel questioned Petitioner about his progress in the residential sex offender program. Petitioner's failure to present the records to the state post-conviction court resulted in his failure to demonstrate counsel was ineffective for failing to introduce the records at the transfer hearing. Consequently, the appellate court concluded Petitioner failed to demonstrate prejudice because he did not contend that

19

but for counsel's failure to introduce his medical records as an exhibit at the transfer hearing, he would not have pleaded guilty. *Id.* at *7.

According to the state post conviction hearing transcript, Petitioner participated in a sex offender treatment program at Hermitage Hall in Nashville, Tennessee from December 24, 2001, until May 2003, when he discharged himself from the program without completing it. Petitioner's parents had him involved in counseling prior to him being charged in juvenile court [Addendum No. 2, pp. 8-12].

Although Petitioner testified at his state post conviction hearing that he did not testify at the transfer hearing and that he did not discuss his treatment at Hermitage Hall with counsel, on cross-examination he admitted he did testify at the transfer hearing and that the evidence about him being at the Hermitage Hall, leaving it, and getting into trouble was presented to the juvenile court at the transfer hearing [Addendum No. 2, pp. 16-29]. His counsel testified he was aware of Petitioner's psychosexual evaluation and obtained a copy of it and he was aware of Petitioner's treatment at Hermitage Hall [Addendum No. 2, p. 39]. Counsel further testified that based on his conversations with Petitioner and the juvenile officer, "that anything dealing with Hermitage Hall was going to be adverse to us, that it was not going to be helpful for me to have that information." Counsel further testified that he was informed the records would indicate Petitioner "had not actually progressed as he should have progressed." [Addendum No. 2, pp. 43-44].

The record before the Court demonstrates counsel made a strategic decision not to present any medical or psychological proof at the transfer hearing. Counsel testified that prior to the transfer hearing, he spoke with Petitioner and his juvenile officer, and determined that the medical and psychological proof available from his progress at Hermitage Hall would be detrimental to his client.

20

"Which witnesses, if any, to call . . . is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." *Waters v. Thomas,* 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*). Moreover, Petitioner is unable to establish ineffective assistance of counsel simply by pointing to additional evidence that could have been presented, without presenting the evidence for the Court's review. Therefore, even if counsel's performance was deficient, Petitioner has failed to demonstrate he suffered any prejudice by counsel's decision as he has not presented any medical or psychological proof that should have been presented at the transfer hearing.

In sum, not only has Petitioner failed to demonstrate counsel's decision not to present medical and psychological at the transfer hearing was objectively unreasonable, he has failed to demonstrate he suffered any prejudice for counsel's failure to introduce it. Petitioner has not demonstrated, much less even alleged, that but for counsel's failure to introduce his medical records, he would not have entered a guilty plea and demanded a trial. Accordingly, the state court's conclusion that counsel was not ineffective is not based upon an unreasonable application of *Strickland* or *Hill* and was not founded on an unreasonable factual determination in light of the evidence adduced in the state court proceedings; thus, habeas relief is not warranted.

### 3. *Failure to Appeal Dismissal of Motion to Dismiss*

Lastly, Petitioner complains that counsel did not appeal the denial of his motion to dismiss. A motion to dismiss was filed in juvenile court and counsel argued that the nearly two-year delay in Petitioner's prosecution was unreasonable and prejudicial. The juvenile court dismissed the motion and found that the fact Petitioner had been in custody much of the time, made the State's delay in filing the motion to transfer less unreasonable and granted the State's motion to transfer, thus, denying Petitioner's motion to dismiss [Addendum No. 2, Exhibit 2].

21

When analyzing this claim, the state appellate court first identified the applicable rule of the

Tennessee Rules of Juvenile Procedure:

> Rule 17 of the Tennessee Rules of Juvenile Procedure provides that:
>
> (a) TIME LIMITS GENERALLY. All cases in which a child is detained or in custody shall be scheduled for adjudication within thirty (30) days of the date the child is taken into custody. All other cases shall initially be scheduled for adjudication within thirty (30) days of the date of filing if such early scheduling appears to the court to be entirely reasonable and possible considering the circumstances of the case.... In any event, every case shall be scheduled to be heard within ninety (90) days.
>
> (b) CONTINUANCES. Upon good cause being shown, or by agreement between the parties, any case may be continued from time to time as the court may direct.
>
> Circumstances which may provide good cause for a longer period of time before adjudication include giving a juvenile time "to prove to the court that a less restrictive disposition may be desirable." *Id.*, Advisory Commission Comments. "Another valid reason for extensions of the limits would be to obtain psychological evaluations and testing which could not be obtained within the specified time limits." *Id*.

*Kimball v. State*, 2007 WL 2757634, at *7.

The appellate court quoted the following finding of the post-conviction court finding no

prejudice:

> during much of the time [Petitioner] was undergoing treatment at a residential facility pursuant to orders of the juvenile court. And at other times, he was involved in other criminal proceedings in the criminal court of Williamson County. Petitioner had also rejected offers made to him to resolve the case on a plea to a lesser included offense, and the State, as it has a right to do, had withdrawn the offer and then eventually moved to transfer the case to criminal court.

*Id.* The appellate court ultimately concluded that even if counsel's failure to appeal the dismissal

of the motion to dismiss was deficient performance, Petitioner failed to demonstrate prejudice

because he does not contend that but for counsel's failure there is a reasonable probability that he

would not have entered a plea of guilty.

22

Although Petitioner complains that counsel should have pursued the motion to dismiss because of the delay in his case, the record reflects that during much of the delay he was undergoing treatment at a residential facility and at other times he was involved in other criminal proceedings in the Criminal Court of Williamson County. In addition, the delay of scheduling the juvenile court hearing from October 8, 2003, until March 2005 also resulted from Petitioner's objection to having a special judge hear the motions [Addendum 2, Exhibit 2]. Furthermore, the state attempted to resolve the case by making an offer of a plea to a lesser included offense which Petitioner rejected. Therefore, the state eventually moved to transfer the case to criminal court. Finally, Petitioner knowingly waived his appellate rights during his guilty plea proceedings and counsel had explained to him that there would be no appeal if he entered a guilty plea [Addendum No. 2, Transcript of Guilty Plea, p. 3]. Consequently, there is nothing in the record to indicate, nor does Petitioner argue, there is a reasonably probability he would have received a favorable ruling had he pursued such an appeal.

A review of the habeas and *Strickland* and *Hill* standards, along with the Tennessee appellate court's decision, reveals Petitioner has failed to demonstrate the state court's decision was contrary to law, involved an unreasonable application of *Strickland* or *Hill*, or was based upon an unreasonable determination of the facts. 28 U.S.C. § 2254(d); *William v. Taylor*, 529 U.S. at 412-13. Accordingly, because Petitioner has not demonstrated he was prejudiced by counsel's failure to appeal the dismissal of his motion to dismiss, he has failed to demonstrate he suffered any prejudice and habeas relief is not warranted.

## VI.     CONCLUSION

Petitioner is not entitled to an evidentiary hearing or habeas relief. Accordingly, his § 2254

petition will be **DISMISSED** (Court File No. 1).

A judgment will enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**